UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COMPETITIVE ACCESS SYSTEMS,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 25-cv-04595-PCP (VKD)<br><br>**ORDER RE NOVEMBER 21, 2025 DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 79 |

Plaintiff Competitive Access Systems ("CAS") and defendant Apple Inc. ("Apple") ask the Court to resolve their disputes concerning limits on printing source code and limits on the number of email custodians and search terms. Dkt. No. 79. The Court finds these disputes suitable for resolution without oral argument. Civil L.R. 7-1(b).

In this patent infringement action, the parties have agreed on most of the terms of a Protective Order Regarding the Disclosure and Use of Discovery Materials ("Protective Order") and an Order Regarding Discovery of Electronically Stored Information ("ESI Order"). *See* Dkt. Nos. 79-1, 79-2. Having reviewed the parties' joint discovery dispute letter, the proposed orders and disputed terms, and the applicable authority, the Court resolves these disputes as follows:

**1.    Protective Order**

The parties disagree about whether the Protective Order should set presumptive limits on the number of pages of source code that may be printed, and if so, what those presumptive limits should be. Apple's source code is the only source code the parties presently anticipate will be subject to production.

The parties agree that the "Receiving Party" (here, CAS) may print source code "only

when necessary to prepare court filings or pleadings or other papers (including at testifying expert's expert report)," and may not print source code "in order to review [it] elsewhere in the first instance." Dkt. No. 79-1 at ECF 15-16 (sec. 11(c)(v)).  Apple argues that the Protective Order should additionally specify that:  CAS may not print more than five pages of a "continuous block" of source code; more than five pages "shall be presumed to be excessive"; and CAS will bear the burden "to demonstrate the need for such a printed copy." *Id.*; Dkt. No. 79 at 4.  In addition, Apple argues that CAS should not be allowed to print more than a total of 20 pages of source code, unless permitted by the Court.[1]  Dkt. No. 79-1 at ECF 16 (sec. 11(c)(v)); Dkt. No. 79 at 4.  CAS argues that the Protective Order should not specify a presumptive limit on printing consecutive pages of source code or a cap on the number of total pages that may be printed.  Dkt. No. 79-1 at ECF 16 (sec. 11(c)(v)); Dkt. No. 79 at 2.  It acknowledges that under the agreed terms of the Protective Order, Apple may object to the scope of CAS's requests for printed source code, and any disputes the parties do not resolve will need to be resolved by the Court.

        Presumptive limits on printing source code are often useful, particularly where agreed limits help the parties avoid unnecessary disputes, but such limits are not always warranted.  Here, the Court is informed that Apple is expected to produce source code for multiple accused features, across multiple devices and services, for a period spanning more than ten years. *See* Dkt. No. 79 at 1; *see also* Dkt. No. 71 ¶¶ 1, 13, 14, 48, 49, 56, 58, 78.  While the Court credits Apple's assertion that, as a general matter, its source code requires heightened protection, Apple does not address how its proposed printing limits reasonably account for the number of features and accused products at issue.  Moreover, Apple's proposal appears to treat the printing of source code for current products the same as the printing of source code for products that are more than ten years old.  While such treatment may be appropriate, the Court expects that older source code may not require the same safeguards as current source code.  Also, Apple's argument that its proposed limits on source code printing are "especially justified to avoid the possibility of complete code

---

[1] Apple's proposal includes a "trade-in mechanism" that would permit CAS to return printed source code pages it no longer requires in exchange for an equivalent number of new printed source code pages.  *See* Dkt. No. 79 at 4.

1  repositories being available outside of Apple control" (Dkt. No. 79 at 4) is not persuasive, as there
2  is no indication that CAS contemplates printing Apple's complete source code for any accused
3  product. In any event, the Court is unable to make any reasoned determination about appropriate
4  limits for printing consecutive pages or total pages on the record presented. *See EPL Holdings,*
5  *LLC v. Apple Inc.,* No. 12-cv-04306 JST (JSC), 2013 WL 2181584, at *6 (N.D. Cal. May 20,
6  2013) ("[T]he number of necessary pages of contiguous source code varies. Five pages may be
7  sufficient for a briefing to the court, but a number greater than five pages may be necessary when
8  deposing Apple's experts. Thus, placing a blanket limit on the number of source code pages is
9  unhelpful.").

10  For these reasons, the Court declines to adopt Apple's proposed source code printing limits
11  at this time. The parties shall file a revised version of the Protective Order that omits the
12  bracketed text labeled "Apple's Position" in section 11(c)(v) of the order (as well as the text
13  labeled "Plaintiff's Position"). In addition, the parties are advised that the Court will require them
14  to comply with the undersigned's discovery dispute resolution procedures for any dispute about
15  printing source code. *See* Standing Order for Civil Cases (sec. 4). Before submitting a revised
16  version of the Protective Order for the Court's approval, the parties should make appropriate
17  modifications to section 13 of the Protective Order. *See, e.g., Anoxia Med., Inc. v. Alembic, LLC*,
18  No. 5:25-cv-05690-EKL, Dkt. No. 31 (sec. 6.3)

19  **2.     Custodians and search terms**

20  The parties also disagree about whether the ESI Order should set a presumptive limit on
21  the number of email custodians and the number of search terms that will be used to search each
22  custodian's email.

23  As the parties acknowledge, paragraph 10 of this District's Model Stipulation and Order
24  Re: Discovery of Electronically Stored Information for Patent Litigation ("Model ESI Order")
25  provides:

26  > Each requesting party shall limit its email production requests to a
27  > total of five custodians per producing party for all such requests.
    > The parties may jointly agree to modify this limit without the
28  > Court's leave. The Court shall consider contested requests for

> additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

Paragraph 11 of the Model ESI Order further provides, in relevant part:

> Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.

As the District's website indicates, use of the Model ESI Order is "highly recommended" but "voluntary." *See* https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/e-discovery-esi-guidelines-model-stipulated-orders; *see also Finisar Corp. v. Nistica, Inc.,* No. 13-cv-03345-BLF (JSC), 2014 WL 12887160, at *2 (N.D. Cal. Dec. 12, 2014) (endorsing view that Model ESI Order is "not required, but instructive").

      The agreed portions of the parties' ESI Order do not track the District's Model ESI Order; rather, the parties appear to have crafted their own proposed order suited to the circumstances of this case. *See* Dkt. No. 79-2. Nevertheless, Apple argues that the Court should adopt the five-custodian and five-search term per custodian (for a total of 25 search terms) limits set forth in the Model ESI Order. Dkt. No. 79 at 5. Apple contends that these limits are presumptively reasonable, given that substantial email discovery is usually not warranted in patent cases, and this case is no exception. *Id.* at 5-6. CAS responds that each side should be permitted to obtain email discovery from up to 10 custodians using a total of 50 search terms. *Id.* at 3. CAS argues that it requires email discovery of more than five custodians because relevant email is likely to span "multiple business units" and many discrete custodians, given the number of accused products spanning multiple years. *Id.* Similarly, it argues that a limit of 25 search terms is insufficient to capture relevant email "for a case that spans multiple technologies and dozens of products where [evidence of] infringement, damages, secondary considerations, knowledge of infringement, and encouraging others [to infringe] . . . could exist as early as 2009." *Id.*

      The Court agrees with Apple that questions of infringement, invalidity, and calculation of damages typically do not depend on, or require discovery of, information contained in custodial

4

email. However, email may contain information relevant to other issues that often arise in patent cases, including objective indicia of nonobviousness, inducement, willfulness, and some of the *Georgia Pacific* factors that bear on a determination of a reasonably royalty—all subjects that CAS says are at issue in this case. *See* Dkt. No. 79 at 3; *see also* Dkt. No. 71. What matters is whether a particular custodian is likely to have email relevant to one or more of these issues, and whether discovery of such email is proportional to the needs of the case.

While the Model ESI Order posted on the District website generally adopts reasonable limits on discovery of custodial email, judges in this District do not require strict adherence to the five-custodian/five-search term per custodian limits that appear in the (recommended, but voluntary) Model ESI Order. Indeed, in *DCG Systems, Inc. v. Checkpoint Technologies, LLC*, on which Apple principally relies, Judge Grewal ultimately entered an order permitting each side to obtain initial email discovery from 10 custodians (with the possibility of an additional five custodians), applying 20 search terms per custodian (with the possibility of an additional five search terms per custodian). *DCG Systems, Inc. v. Checkpoint Technologies, LLC*, No. 11-cv-03792-PSG, Dkt. No. 33 (paras. 10, 11) (N.D. Cal. Nov. 2, 2011); *see also Nevro Corp v. Bos. Sci. Corp.*, No. 16-cv-06830-VC (MEJ), 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (adopting party's proposal of seven custodians and seven search terms per custodian); *Finisar*, No. 13-cv-03345-BLF (JSC), Dkt. No. 149 (paras. 9, 10) (N.D. Cal. Jan. 16, 2015 (adopting agreed limits of eight custodians and 10 search terms per custodian).

As with the parties' dispute about presumptive limits on source code printing, it is difficult for the Court to determine on the record presented whether the presumptive limits on custodians and search terms should be five and 25 or 10 and 50, or some other number. Nevertheless, for purposes of resolving this dispute, the Court adopts CAS's proposal for section 4, subsections (i) and (ii), with modifications indicated below:

> In effort to control costs and reduce the volume of email ESI that is not relevant to the matter, the parties will adhere to the following criteria:
>
> i. **Custodians**. Each side shall limit its email production requests to no more than the ten (10) custodians likely to have the most relevant discoverable information in their possession, custody, or control. *A party*

5

   *must limit* its custodians to fewer than ten (10) custodians if it cannot identify as many custodians in possession, custody, or control of any relevant discoverable information *likely to be found in custodial email, rather than in a centralized repository or other non-custodial source of ESI*. . . .

  ii. **Search Terms**. The parties will use mutually agreed upon search terms to filter for relevancy prior to review and production of email ESI. Each Party shall limit its initial electronic searches to no more than fifty (50) total search terms, to be divided among the elected custodians as the requesting Party sees fit. . . .

Any disputes regarding whether a particular custodian has email that is properly the subject of discovery in this action, or whether particular search terms may be applied, must be addressed using the undersigned's discovery dispute resolution procedures.

***

The parties must file a revised proposed Protective Order and revised proposed ESI Order for the Court's review and approval by **December 19, 2025.**.

**IT IS SO ORDERED.**

Dated: December 5, 2025

                                Virginia K. DeMarchi
                                United States Magistrate Judge